NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK BRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES HOEBICH, *et al.*,<br><br>    Defendants. | Civil Action No. 24-9625 (RK) (TJB)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

  **THIS MATTER** comes before the Court upon two Motions to Dismiss filed by Defendants the Honorable James Hoebich, the Chief Municipal Court Judge for the City of New Brunswick; Charly Gayden, a Housing Department Prosecutor for the City of New Brunswick; and Kimberly Milligan, the Court Administrator for the City of New Brunswick Municipal Court, ("First Motion," ECF No. 11), and Defendants Tom Boylan, a Housing Inspector for the City of New Brunswick, and Brenda Gayden, the Discovery Clerk for the Housing Authority for the City of New Brunswick (collectively, "Defendants") ("Second Motion," ECF No. 12). Plaintiff Frank Bright ("Plaintiff") filed an opposition to the First Motion. (ECF No. 13.) Defendants replied.[1] (ECF Nos. 14, 15.) The Court has considered the parties' submissions and resolves the pending motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions (ECF Nos. 11, 12) are **GRANTED**, and the Complaint (ECF No. 1) is dismissed.

---

[1] The Second Motion adopts the arguments made in the First Motion. (*See* ECF Nos. 12, 15.)

I.   **BACKGROUND**

*Pro se* Plaintiff Frank Bright, who resides in New Brunswick, New Jersey, seeks redress for what he views as a pattern of harassment from a number of municipal officials and employees: Chief Municipal Court Judge of the New Brunswick Municipal Court James Hoebich (the "Chief Judge"); Housing Prosecutor for the City of New Brunswick Charly Gayden (the "Prosecutor"); Chief Housing Inspector for the City of New Brunswick Tom Boylan (the "Inspector"); Court Administrator for the City of New Brunswick Kimberly Milligan (the "Court Administrator"); and Discovery Clerk for the City of New Brunswick Brenda Gayden (the "Discovery Clerk"). (*See generally* ECF No. 1.)

Plaintiff alleges that, since 2015, he has been cited for an "inordinate" number of "minor property maintenance offenses" for which summonses were issued, all relating to a single property. (*Id.* at 6, 8.) The Complaint's factual allegations regarding the property violations are limited. What is alleged is that (i) the purported violations began in 2015, (ii) certain events giving rise to Plaintiff's claims occurred on September 27, 2022 and July 10, 2024, and (iii) the Inspector subjected Plaintiff to approximately "100 cases" and issued 72 summonses in 2023 and 2024 alone. (*Id.* at 4, 6.) Missing from the Complaint are allegations as to (i) the total number of alleged property violations (beyond the 72 alleged violations in 2023–2024), (ii) the specific dates of the violations, and (iii) the nature of the claimed violations. In addition, Plaintiff's form Complaint fails to provide the Court with any indication as to the outcome of the purportedly more than 100 municipal court cases.

Furthermore, Plaintiff alleges that the Chief Judge (aided by the Court Administrator) and the Prosecutor (aided by the Discovery Clerk) repeatedly caused delays of the court proceedings through belated production of discovery. (*Id.* at 6–8.) Specifically, Plaintiff alleges the Prosecutor provided him with late discovery, sometimes just a few days before trial, including trials scheduled

for September 27, 2022 and July 8, 2024. (*Id.* at 6.) As with the over 100 cases, the Complaint is unclear as to whether the trials scheduled for September 2022 and July 2024 ultimately took place or, if they did, what the outcomes were. Plaintiff asserts that because of delayed discovery, he was deprived of a meaningful opportunity to review evidence against him, making it difficult to properly prepare for trial. (*Id.*) Brenda Gayden, a Discovery Clerk working with the Prosecutor, is alleged to have somehow violated Plaintiff's rights when she acted as the conduit between Plaintiff and the Prosecutor on discovery matters. (*Id.* at 7.)

Further, Chief Judge James Hoebich is alleged to have (i) denied Plaintiff's requests to suppress evidence and dismiss or adjourn his cases, (ii) failed to state "mandatory" opening remarks in court, (iii) treated him differently than the Prosecutor in decisions on adjournment requests, and (iv) denied Plaintiff his right to timely discovery. (*Id.* at 6–9.) Kimberly Milligan, a Court Administrator, is alleged to have violated Plaintiff's rights when she communicated with Plaintiff on behalf of the Chief Judge. (*Id.* at 7.)

Plaintiff also challenges the Chief Judge's decision to find him in contempt of court on September 27, 2022. (*Id.* at 7.) According to Plaintiff, he learned of the contempt ruling only after it was attached to an opposition brief two months later. (*Id.*) Plaintiff appealed the Chief Judge's contempt order to the Superior Court of New Jersey, Law Division, Middlesex County and then again to the Superior Court of New Jersey, Appellate Division.[2] *State v. Bright*, No. A-2137-22, 2024 WL 1599156, at *1 (N.J. Super. Ct. App. Div. Apr. 12, 2024) (per curiam). The contempt order was affirmed at both stages. *Id.* According to Plaintiff, he is now awaiting certification for

---

[2] The Court takes judicial notice of the Superior Court of New Jersey, Appellate Division's decision on Plaintiff's appeal of the contempt order. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("'[W]e may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion.'" (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999))).

further review by the Supreme Court of New Jersey. (*Id.* at 8.)

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violations of: due process under the Fourteenth Amendment; rights to a speedy trial, appeal, counsel, and discovery under the Sixth Amendment; "Systemic Civil Right [sic] Violation culture against Pro Se Litigants" under the Thirteenth, Fourteenth, and Fifteenth Amendments; and "[h]arassment due to political beliefs" under the First Amendment. (*Id.* at 3.) Although the Complaint brings suit against each Defendant in both their individual and official capacities, it does not identify against whom each constitutional violation is asserted. (*Id.* at 2–3.)

To remedy the myriad of alleged constitutional violations, Plaintiff asks the Court to (i) dismiss with prejudice the numerous—but unspecified—municipal court matters brought against him; (ii) order discovery in the unspecified municipal court matters and the dismissal of same if discovery violations persist; (iii) direct municipal judges to give various instructions during proceedings; and (iv) order damages of $1 and a written apology or "[i]f no apology is given, then $300,000 in actual damages." (*Id.* at 9.)

Defendants move to dismiss this action on the following grounds: (i) judicial immunity (as to the Chief Judge and the Court Administrator); (ii) prosecutorial immunity (as to the Prosecutor and the Discovery Clerk); (iii) failure to state a claim; and (iv) statute of limitations.

## II.   LEGAL STANDARD

Motions to dismiss on the basis of judicial immunity and prosecutorial immunity are properly analyzed under the normal Rule 12(b)(6) standard. *Constantine v. New Jersey Dep't of Banking & Ins.*, No. 23-2423, 2024 WL 1988829, at *5 (3d Cir. May 6, 2024) (citations omitted) (judicial immunity); *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (citation omitted) (prosecutorial immunity). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" must be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

In assessing *pro se* complaints, courts are obligated to "liberally construe" the litigant's pleading. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citation omitted). Nevertheless, all litigants, including *pro se* litigants, must put forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) ("*[P]ro se* litigants . . . must still allege sufficient facts to support a claim." (internal quotation marks and citation omitted)).

### III. DISCUSSION

Plaintiff's form Complaint indicates claims are brought against each Defendant in both their individual and official capacities as public employees. (ECF No. 1 at 2, 3.) The Court first addresses the claims against each Defendant in his or her official capacity and then analyzes the individual capacity claims.[3]

---

[3] As discussed below, the Court dismisses the individual capacity claims against the Inspector for failing to state a claim and against all other Defendants on immunity grounds. Notably, however, there are other possible bases to dismiss the Complaint not analyzed herein including Rule 8, *Rooker-Feldman* doctrine, *Younger* doctrine, and statute of limitations. It is axiomatic that a court need not address each and every possible basis for dismissal. *E.g. Thompson v. Cobham*, No. 12-1041, 2012 WL 2374724, at *1 (D.N.J. June 22, 2012) ("[T]he Court need not address every reason to dismiss the [] Complaint.")

A.   OFFICIAL CAPACITY CLAIMS

Lawsuits brought "against local government officials in their official capacities are viewed as suits against the local government, an entity that can be sued under 42 U.S.C. § 1983." *Abdullah v. Cohen*, No. 17-4006, 2017 WL 4779601, at *2 (D.N.J. Oct. 23, 2017) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). Thus, the Court liberally construes the *pro se* Plaintiff's claims against each Defendant in their official capacity as claims against their alleged municipal employer: the City of New Brunswick. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")

Under *Monell*, a municipality can only be liable under § 1983 in two situations: (i) where an official policy or custom is the impetus for a constitutional violation or (ii) when a plaintiff's injuries were caused by a municipality's failure or inadequacy, such as a failure to train, supervise, or discipline ("failure theory"). *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The Court first inquires as to the municipal's policy or custom. Such a policy need not be formally enacted or in writing; a "pertinent decision" by a person with authority on a subject can qualify as an official policy. *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Either way, there can be no municipal liability under the first path where an individual employee did not act pursuant to an alleged policy or custom. *Id.*

Here, the claim that most plausibly invokes a "policy or custom" is Plaintiff's reference to "Systemic Civil Right Violation culture against Pro Se Litigants in violation of, but not limited to, 13th, 14th, and 15th amendments." (ECF No. 1 at 3.) Plaintiff, however, has not alleged any facts to support a "systemic culture" of civil rights violations, nor any policy or custom that has created such a systemic culture. Here, even construing Plaintiff's *pro se* pleadings liberally, his legal conclusions and bald assertions cannot form the basis of a claim. *See Morse v. Lower Merion Sch.*

6

*Dist.*, 132 F.3d 902 (3d Cir. 1997). The Complaint is similarly devoid of any allegations sufficient for the failure theory. *See, e.g., Anglin v. Anglin*, No. 16-04049, 2024 WL 3355303, at *9 (D.N.J. July 9, 2024) ("[I]t is not the Court's job to make a *pro se* Plaintiff's arguments for him."). Accordingly, all official capacity claims—construed as claims against the City—are **DISMISSED** without prejudice.

### B.    JUDICIAL IMMUNITY

Plaintiff's Section 1983 claims against the Chief Judge and the Court Administrator in their individual capacities (*see* ECF No. 1 at 3, 6–8), are barred *in toto* under the doctrine of judicial immunity.

The judicial immunity doctrine is "founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). Indeed, judicial immunity extends even to judicial acts that are taken "'in excess of [the judge's] jurisdiction, and are alleged to have been done maliciously or corruptly.'" *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (citation omitted); *see also Lee v. Gallina-Mecca*, No. 21-20197, 2022 WL 4354724, at *5 (D.N.J. Sept. 19, 2022) ("Judges are generally absolutely immune from suit in both their individual and official capacities." (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam)), *aff'd*, No. 22-2871, 2023 WL 5814783 (3d Cir. Sept. 8, 2023)). A plaintiff's mere "[d]isagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity . . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." *Id.* at 363–64.

The Third Circuit has explained that this immunity can only be overcome in two narrow sets of circumstances: (i) in undertaking nonjudicial acts, i.e., actions not taken in the role of judge,

7

or (ii) actions that may have the appearance of being judicial in nature, but are "'taken in the complete absence of all jurisdiction.'" *Figueroa*, 208 F.3d at 440 (citing *Mireles*, 502 U.S. at 11–12). As the Complaint fails to contain any allegations sufficient to establish that either exception applies, judicial immunity bars all claims against the Chief Judge. *See Kirkland v. DiLeo*, 581 F. App'x 111, 115 (3d Cir. 2014). This doctrine applies fully to municipal court judges, including the Chief Judge here. *Bartee v. Shenkus*, No. 24-8326, 2024 WL 5074750, at *2 (D.N.J. Dec. 11, 2024) ("Judicial immunity extends to judges of courts of limited jurisdiction, such as municipal court or administrative law judges, because their roles are 'functionally comparable' to that of a judge." (citing *Figueroa*, 208 F.3d at 441)).

Without factual support, Plaintiff argues in his opposition brief that the Chief Judge's "actions were so egregiously out of the context of acting in his judicial capacity." (ECF No. 13 at 2.) While Plaintiff may be trying to allege the Chief Judge's conduct fits within one of the exceptions to immunity, the Court need not credit such legal conclusions. *Lutz v. Portfolio Recovery Assocs.*, 49 F.4th 323, 327 (3d Cir. 2022) (citation omitted). Furthermore, Plaintiff's Complaint belies this assertion. Indeed, the allegations in the Complaint against the Chief Judge pertain solely to his handling of judicial matters before him, such as his decisions on discovery issues and on Plaintiff's requests for adjournment and dismissal. (ECF No. 1 at 8.) None of the factual allegations involve actions taken by the Chief Judge in a nonjudicial capacity or were undertaken without jurisdiction. Here, because the allegations underlying the claims against Chief Judge Hoebich pertain to his handling of property violations in municipal court—actions undertaken through the proper exercise of judicial authority—the claims against the Chief Judge are dismissed with prejudice.[4]

---

[4] The Third Circuit has approved of dismissal with prejudice on judicial immunity grounds. *See, e.g., Williams v. Stack*, No. 23-2685, 2024 WL 3548766, at *1 (3d Cir. July 26, 2024) (per curiam) (approving

8

It is well-established that the immunity doctrine has been extended to "certain others who perform functions closely associated with the judicial process," including "those who serve as arms of the court, . . . fulfill[ing] a quasi-judicial role at the court's request." *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (internal quotation marks and citation omitted). Here, the Court Administrator for the City of New Brunswick Municipal Court is alleged to have acted as a liaison between Plaintiff and the Chief Judge. (ECF No. 1 at 7.) Therefore, in serving on behalf of the Chief Judge, the claims against the Court Administrator are also dismissed with prejudice on immunity grounds. *See Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012) ("[T]he defendant court administrators are similarly absolutely immunized from a suit for damages under the doctrine of quasi-judicial immunity, because their activities were an integral part of the judicial process."); *see also Martinez v. McCormick*, No. 24-1412, 2024 WL 3534689, at *1 (3d Cir. July 25, 2024) (affirming district court's dismissal with prejudice of claims for damages and injunctive relief on judicial immunity grounds).

### C. PROSECUTORIAL IMMUNITY

Prosecutors are also absolutely immune from suit in their individual capacities for all actions and decisions taken in furtherance of their prosecutorial duties. *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). Here, all of

---

a district court's dismissal with prejudice when claims are dismissed on judicial immunity grounds); *Renchenski v. Ammerman*, No. 23-2519, 2024 WL 885120, at *2 (3d Cir. Mar. 1, 2024) (per curiam) (agreeing that amendment of complaint would be futile where the complaint is dismissed on immunity grounds); *Johnson v. U.S. Dep't of Just.*, 541 F. App'x 160, 162 (3d Cir. 2013) (summarily affirming dismissal with prejudice on judicial immunity grounds); *Waris v. Frick*, No. 06-5189, 2007 WL 954108, at *5 (E.D. Pa. Mar. 28, 2007) ("[T]he settled doctrine of absolute judicial immunity requires the dismissal with prejudice.") Dismissal with prejudice is proper because any amendment of the claims against the Chief Judge would be futile as all the events alleged involve the Chief Judge in his judicial role. *See, e.g., Ross v. Essex Cnty. Ct.*, No. 23-3122, 2024 WL 2954282, at *1 (D.N.J. June 12, 2024), (indicating judicial immunity is a "formidable obstacle[]" to any amendment (citation omitted)), *appeal dismissed sub nom. Ross v. Essex Cnty. Superior Ct.*, No. 24-2315, 2024 WL 5326461 (3d Cir. Dec. 9, 2024).

Plaintiff's allegations against the Prosecutor relate to the handling of discovery and other aspects of the various municipal court actions against Plaintiff. (*See* ECF No. 1 at 6.) Therefore, the Prosecutor is absolutely immune from all of Plaintiff's claims against her as all of Plaintiff's allegations arise in the context of her prosecutorial duties.

Prosecutorial immunity is also extended to the Discovery Clerk for the Housing Authority for the City of New Brunswick based on the nature of the allegations against her. "A prosecutor's employee . . . is also entitled to absolute immunity 'when the employee's function is closely allied to the judicial process.'" *Louis v. New Jersey*, No. 22-4490, 2023 WL 4074098, at *5 (D.N.J. June 16, 2023) (quoting *Davis v. Grusemeyer*, 996 F.2d 617, 631 (3d Cir. 1993)); *Moore v. Middlesex Cnty. Prosecutors Off.*, 503 F. App'x 108, 109 (3d Cir. 2012) ("[T]he employee or agent of a prosecutor, is also granted absolute immunity from § 1983 suits where the function of the employee and the judicial process are closely allied.").

The Complaint alleges that the Discovery Clerk communicated with Plaintiff on behalf of the Prosecutor regarding discovery and thus aided the Prosecutor in providing Plaintiff with late discovery responses. (ECF No. 1 at 7.) The claims against the Discovery Clerk arise only in her role in support of the Prosecutor, and thus the Discovery Clerk is entitled to immunity. *See, e.g., Conklin v. Anthou*, 495 F. App'x 257, 264 (3d Cir. 2012) (extending immunity to staff involved in the judicial process) (citing *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 772–73 (3d Cir. 2000)). Thus, the claims against the Prosecutor and the Discovery Clerk are dismissed with prejudice.[5]

---

[5] As was the case with judicial immunity, dismissal on prosecutorial immunity grounds also warrants dismissal with prejudice because any amendment would be futile. *See, e.g., Ouaziz v. City of Jersey City*, No. 22-3385, 2023 WL 7001846, at *2 (3d Cir. Oct. 24, 2023) (affirming district court's dismissal with prejudice on prosecutorial immunity grounds); *Reihner v. Washington Cnty., Pa.*, No. 15-143, 2015 WL 6737972, at *2 (W.D. Pa. Nov. 4, 2015), *aff'd as modified*, 672 F. App'x 142 (3d Cir. 2016) (dismissing with prejudice a complaint as amendment would be futile because, *inter alia*, the judge was protected under absolute judicial immunity and the district attorney was protected under prosecutorial immunity).

D.     **ALLEGATIONS AGAINST THE INSPECTOR**

The final Defendant, the Inspector, is not protected by either judicial or prosecutorial immunity in his individual capacity. The Complaint alleges that the Inspector harassed Plaintiff by issuing many violations related to Plaintiff's alleged maintenance of his property and failed to provide Plaintiff with notice of the summonses for such violations. (ECF No. 1 at 6, 8.) While not readily apparent from the Complaint, the Court construes the "Harassment due to political beliefs (1st Amendment)" claim as a First Amendment retaliation claim against the Inspector. (*See id.* at 3.) No other claim against the Inspector is apparent from the face of the Complaint.[6] *See Friedfertig Fam. P'ship 2 v. Lofberg*, 2013 WL 6623896, at *3 (D.N.J. Dec. 13, 2013) (courts should not "be required to guess which particular claims are being asserted . . . and/or to sift through the allegations to piece together those claims").

To allege a First Amendment retaliation claim, Plaintiff must allege that (1) he "engaged in conduct protected by a right in the Constitution," (2) Defendants retaliated against Plaintiff in a manner sufficient "to deter a person of ordinary firmness from exercising [his] constitutional rights," and (3) a "causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (internal quotation marks and citations omitted).

Plaintiff fails to meet any of the elements of a First Amendment retaliation claim. Plaintiff has not alleged that he engaged in any protected activity. Nor has he alleged how any First

---

[6] Plaintiff argues in his opposition brief that he was denied his right to a speedy trial because of the Inspector's failure to arrive on the scheduled inspection day. (ECF No. 13 at 4.) However, a Sixth Amendment claim for a speedy trial only applies to criminal proceedings. *Rogers v. Hauck*, No. 08-3673, 2009 WL 3584923, at *8 (D.N.J. Oct. 26, 2009) ("'[T]he Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution.'" (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). Therefore, no such claim is cognizable here in the context of proceedings over property violations.

11

Amendment rights were infringed upon in connection with the issued property violations. Therefore, the Complaint fails to allege a First Amendment violation or any other constitutional violation against the Inspector.[7] The claims against the Inspector are dismissed without prejudice.

---

[7] Although the Court declines to analyze other grounds to dismiss the Complaint against the Inspector, courts in other districts have found "building inspectors and code enforcement officers are [protected by] qualified immunity." *Thomas v. Genova*, 698 F. Supp. 3d 493, 519 (E.D.N.Y. 2023), *aff'd as amended*, No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025); *see also O'Hanlon v. City of Chester*, No. 00-0664, 2002 WL 501138, at *14 (E.D. Pa. Mar. 27, 2002), *aff'd*, 79 F. App'x 531 (3d Cir. 2003) (finding housing inspectors are entitled to qualified immunity).

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED**. All individual capacity claims against Defendants Chief Judge, Court Administrator, Prosecutor, and Discovery Clerk are dismissed with prejudice. All claims against Defendant Inspector and all other official capacity claims construed as claims against the City of New Brunswick are dismissed without prejudice. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: May 6, 2025