NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANK BRIGHT,<br><br>       Plaintiff,<br><br>v.<br><br>JAMES HOEBICH et al.,<br><br>       Defendants. | Civil Action No. 24-9625 (RK) (TJB)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Thomas Boylan's ("Defendant") Motion to Dismiss Plaintiff Frank Bright's ("Plaintiff") Second Amended Complaint ("SAC," ECF No. 40) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 49.) Plaintiff submitted a brief in opposition. (ECF No. 50.) Defendant replied. (ECF No. 51.) The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Motion to Dismiss is **GRANTED**. The Complaint is **DISMISSED** with prejudice for failure to state a claim.

## I.   BACKGROUND[1]

### A. PROCEDURAL BACKGROUND

This is *pro se* Plaintiff Frank Bright's third attempt at seeking redress for alleged constitutional deprivations arising out of his purported political activism, which he claims has

---

[1] The Court has recounted the factual and procedural history of this matter at length in its prior Opinions dismissing Plaintiff's First Amended Complaint and need not do so again here. (*See* ECF No. 37.) As such, the Court provides only the relevant background necessary to decide the instant Motion.

resulted in his being targeted and issued a litany of property maintenance violations over two discrete time-periods, separated by more than a decade.[2] Plaintiff initially brought suit against various municipal officials and employees, including the City of New Brunswick itself, seeking relief resulting from an alleged pattern of harassment. (*See generally* ECF No. 1.) Following the dismissals of Plaintiff's initial and First Amended Complaints ("FAC," ECF No. 20) in written opinions (*see* ECF Nos. 16–17, 37–38)—wherein all Defendants but one were dismissed with prejudice—and denials of reconsideration (*see* ECF Nos. 24, 45), Plaintiff filed his SAC against Defendant, Thomas Boylan, the Chief Housing Inspector for the City of New Brunswick. (*See generally* SAC.)

Plaintiff filed his SAC on December 29, 2025, and asserts a single claim pursuant to 42 U.S.C. § 1983 against the sole remaining Defendant for retaliation in violation of his First Amendment rights. (*See* SAC ¶¶49–53.) Plaintiff's SAC marks his third attempt at asserting this claim against this Defendant, which is pleaded against Defendant in his individual capacity.[3] (*See generally* SAC; FAC; ECF No. 1.) This Court previously dismissed Plaintiff's initial claim without prejudice for failure to allege any element of a First Amendment retaliation claim against Defendant. (*See* ECF No. 16 at 11–12.) After Plaintiff filed his FAC, the Court dismissed the action against Defendant Boylan, again without prejudice, focusing on Plaintiff's failure to

---

[2] As this Court previously noted, this is not Plaintiff's first dispute with the City to make its way into federal court. Plaintiff has twice before sued the City. Both times those cases were dismissed, and those dismissals were affirmed by the United States Court of Appeals for the Third Circuit. *See Heine v. Dir. of Codes & Standards,* No. 15-8210, 2017 WL 3981135 (D.N.J. Sept. 11, 2017), *aff'd sub nom. Heine v. Bureau Chief Div. of Fire & Safety,* 765 F. App'x 816 (3d Cir. 2019) (per curiam); *Fabics v. City of New Brunswick,* No. 14-2202, 2014 WL 11394518 (D.N.J. Nov. 13, 2014), *aff'd* 629 F. App'x 196 (3d Cir. 2015) (per curiam). Indeed, those cases, like this one, concerned disputes about housing inspections. *See Heine,* 2017 WL 3981135, at *7 (noting that that case and *Fabics* concerned such disputes).

[3] In this Court's November 24, 2025 Memorandum Opinion dismissing Plaintiff's FAC, this Court dismissed with prejudice Plaintiff's First Amendment § 1983 retaliation claim against Defendant in his official capacity. (*See* ECF No. 37.)

demonstrate the third element of a retaliation claim, *i.e.*, the causal link between Plaintiff's protected activity and the alleged retaliatory action. (*See* ECF No. 37 at 11 (citing *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024)).)

In his SAC, Plaintiff seeks damages against Defendant Boylan of one dollar and an apology. (SAC at 11.) In the alternative, and in the event that an apology is not forthcoming, Plaintiff demands $300,000, an amount he calculates based on his approximation that the aggrieved matters usurped some "200 days" of his time multiplied by "Plaintiff's value in the marketplace of $1,500 per day," which the Court notes totals $300,000. (*Id.*) In addition, Plaintiff seeks the Court to oversee the New Brunswick Municipal Court by mandating the time and manner of apprising litigants of certain rights and compelling strict compliance with state discovery rules. (*Id.*) Plaintiff further demands that any failures to abide by this Court's mandate related to the above shall require dismissal of the municipal matter. (*Id.*)

As is a regrettable theme throughout this Opinion, the SAC's allegations are routinely jumbled, disjointed, and conclusory and thus are difficult to parse. Nonetheless, the Court has expended significant time and effort endeavoring to do so.

**B. FACTUAL BACKGROUND**

      1.     <u>Historical Tensions Between Plaintiff and Various Officials</u>

Turning to the merits of Plaintiff's SAC, the Court notes that the factual basis[4] for Plaintiff's claim remains much the same as previously asserted in his prior pleadings.[5] (*See*

---

[4] As Plaintiff did in his Opposition brief in response to Defendants' Motions to Dismiss his FAC, Plaintiff again attempts to argue additional facts in his Opposition Brief. (*See generally* ECF No. 50.) The Court again declines to consider any additional facts raised in Plaintiff's Opposition Brief not already contained within his SAC. (*See* ECF No. 37 at 8, n.5; 9, n.6 (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) ("[I]t is axiomatic that facts contained within a brief but not the complaint cannot be considered at the motion to dismiss stage."))).

[5] (*Compare* FAC ¶¶ 15–16, 18, 25, 26, 29, 35, *with* SAC ¶¶ 7, 9, 14, 26, 28–29, 39.)

*generally* SAC.) As before, Plaintiff alleges that he has been involved in local politics for three decades and has "long been publicly critical of corruption, an unelected school board, various items colloquially known as Writs of Mandamus and more," and, as a City Commissioner, "express[ed] his views . . . at public meetings, . . . City Council meetings, newspaper opinion columns, and political organizing." (*Id.* ¶ 7; FAC ¶ 15 (pleading identical allegations in the FAC).) Plaintiff states that for some unstated time-period he was the municipal chairman of the "opposition party," and, also for an unstated duration, in the early 2000's occupied the role as Commissioner of the New Brunswick Housing and Redevelopment Board, with his activism frequently reported on by local newspapers. (SAC ¶¶ 8, 10, 13.) According to Plaintiff, Defendant has known him since 2000 and is aware of Plaintiff's political views and activism, having previously attended a televised rally titled "Kick Frank Bright Out of New Brunswick," where Defendant was allegedly "seen applauding the most vicious statements." (*Id.* ¶¶ 11, 14–15.) Supposedly, in an effort to shed light on this incident, and presumably to bolster the allegations of retaliation, Plaintiff attached as an exhibit to his SAC a newspaper article dated October 5, 2002 which indeed chronicled a local public protest of Plaintiff, who was identified by name and as Housing Authority Commissioner, prompted by Plaintiff's allegedly mocking the disabled Council President who was left paralyzed from a tragic accident. (*See* ECF No. 40-2 at 22–23.)

Plaintiff alleges that Defendant has "mentioned his brain damage," which "causes him to have moments of unfiltered honesty," and that Defendant told him a dozen years ago that "he is afraid of Plaintiff" and was "intimidated when Plaintiff filmed the inspection of 218 George Street[6]

---

[6] At the outset, Plaintiff repeatedly references a property located at 218 George Street. (*See* SAC ¶¶ 18, 40, 44, 46). Nowhere in Plaintiff's 54-paragraphed SAC does he state that he owns or has a possessory interest in this property. Plaintiff references an alleged interaction between Defendant and a "tenant" that purportedly occurred at 218 George Street. (*Id.* ¶ 45.) He also attaches as an exhibit to his SAC a Complaint filed in New Jersey state court over two decades ago which lists his home address as 218 George Street. (*See id.* ¶ 40-2 at 10.) Further compounding this ambiguity, when Plaintiff filed his initial Complaint in this

4

. . . on or about 2004." (SAC ¶18.) Notwithstanding Defendant's expressed fear of and intimidation by Plaintiff, Defendant admitted that he was "directed by the Mayor to harass Plaintiff" and Plaintiff states that Defendant began harassing him in or around 2004-2005. (*Id.* ¶ 16.) Plaintiff generally and repeatedly references that he had been issued "several property maintenance violations," most which he states were "overturned on Constitutional grounds." (*Id.* ¶¶ 19–20.) The SAC fails to provide any information whatsoever about these supposed citations, including how many there were; what the cited violations were for; what the "constitutional grounds" for dismissal of "most" of the citations were; or the results of the remaining citations. Moreover, the SAC fails to state any allegation, other than pure speculation by virtue of Defendant serving as "lead Inspector," as to what role, if any, Defendant Boylan actually played with regard to these "several" property related maintenance violations. (*See generally id.*) In fact, the SAC appears to acknowledge that these citations were actually issued by other inspectors—not Defendant. (*See id.* ¶ 16 ("[M]ultiple tickets given by inspectors . . . ." (cleaned up)).) In addition, the SAC fails to set forth when these several citations were issued, but the structure of the SAC indicates that it was more than a decade ago, as Plaintiff states that Defendant allegedly admitted to Plaintiff that "he [was] harassing Plaintiff for political reasons" approximately twelve years ago. (*Id.* ¶ 22.) Again, and without specifying the time period, Plaintiff further alleges that he was told by unnamed "City Inspectors" that tickets were written for political reasons against him during the time that Defendant was "a lead inspector against Plaintiff." (*Id.* ¶ 23.)

Based upon this information, Plaintiff states that he submitted an OPRA ("Open Public

---

matter, he listed a separate address as his home address that is *not* 218 George Street. (*See* ECF No. 1 at 2.) In the SAC, he adds to this confusion by referring to 218 George Street as a property that is "alleged to be owned by Plaintiff." (SAC ¶ 31.) It is axiomatic that Plaintiff should have made his interest in the property— which is the subject of his property-related code violations—clear in his pleadings. This is yet another example of Plaintiff's deficient pleading which forces the Court to surmise, extrapolate, and connect the dots between his vague allegations and the alleged claims at issue.

Records Act") request "for all tickets written in a calendar year" and thereafter "a map was made"[7] purportedly showing a correlation between tickets given and how politically organized a resident was. (*Id.* ¶ 24.) The SAC identifies no further alleged retaliatory conduct from Defendant taken against Plaintiff, until a sudden flurry of "72 summons on questionable code violations" that occurred "during 2023 and the first half of 2024." (*Id.* ¶ 31.)[8]

Importantly, further absent from Plaintiff's SAC are any allegations that Plaintiff engaged in protected speech beyond the news articles and the like Plaintiff attached to his SAC—which are dated no later than 2005—and the 2022 filing of his municipal appeal. (*See generally id.*)

### 2. Recent Citations

Plaintiff claims that there was a drastic increase in the amount of maintenance violations he received following an appeal of a 2022 municipal court "charge" holding him in contempt,[9]

---

[7] It is unclear from Plaintiff's complaint or photos of the map attached to his Complaint who compiled the map and what exactly the tickets were issued for. (*See* generally SAC; ECF No. 40-2.)

[8] In support of Plaintiff's assertion that Defendant issued 72 summonses against him, Plaintiff attaches as an exhibit to his SAC what appears to be a several page computer print-out of unknown creation with multiple columns listing his name, the New Brunswick Municipal Court, various case numbers, unspecified "offense" numbers, and a variety of "court" and "issue" dates. (*See* ECF 40-2 at 39–45.) Upon review of this exhibit, the Court makes several observations. First, this computer print-out is not a summons and the Court has no idea the relevance of or what is portrayed in Exhibit 7. (*Id.*) In fact, the following exhibit, Exhibit 8 attached to Plaintiff's SAC, to the extent they are legible, appear to actually be a series of summons, with the Judge on the summons listed as now-dismissed Defendant Judge James P. Hoebich. (*See, e.g., id.* at 48.) Second, there is nothing in this computer print-out that refers to or references Defendant Boylan, contradicting Plaintiff's allegation that these "summonses" were issued by him. (*Id.* at 39–45.) Third, the print-out does not mention any "property," let alone one "alleged to be owned by Plaintiff." (*Id* ¶ 31.) Thus, it is clear to this Court that Plaintiff's citation to this exhibit does not support his allegations as pled in his SAC. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (holding that the Court need not accept "unsupported conclusions and unwarranted inferences" (internal quotation marks omitted)).

[9] In its Opinion dismissing Plaintiff's FAC, the Court noted that Plaintiff's municipal contempt charge was affirmed by the Superior Court of New Jersey, Appellate Division. (ECF No. 37 at 4, n.4 (citing *State v. Bright*, No. A-2137-22, 2024 WL 1599156, at *2 (N.J. Super. Ct. App. Div. Apr. 12, 2024) (per curiam)).) Plaintiff again fails to mention this in his SAC. (*See generally* SAC.) As it did previously, the Court will again take judicial notice of this opinion. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("[W]e may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion." (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999))).

alleging that Defendant issued seventy-two summonses to him from 2023-2024 compared to the five to twelve he had been issued in previous years. (*Id.* ¶¶ 28; 31.) Plaintiff maintains that such summonses were not issued to similarly situated residents[10] "who did not express views critical of the City," and alleges that he has received zero tickets from Defendant since the commencement of this lawsuit. (*Id.* ¶¶ 30, 33.) This is despite the fact that Plaintiff indicates he should have been ticketed for "windblown trash" and the fact that the "home [was] still not inspected." (*Id.* ¶ 31.) According to Plaintiff, "there is no logical explanation for this drastic increase except harassment and retaliation, and "[t]his amount of summonses would deter a person of ordinary firmness from continuing to exercise their constitutionally protected activities." (*Id.*) He maintains that during inspections Defendant expressed that the "motive" behind his issuing tickets was due to Plaintiff's political beliefs. (*Id.*)

Plaintiff further points to actions taken in 2023 by the Rent Control Board concerning Plaintiff's purported "standard of service violations." (*Id.* ¶ 34.) Plaintiff alleges that Defendant was "instrumental in this process," and testified under oath that "tickets written against Plaintiff were arbitrary and capricious and involved at least three (3) layers of municipal departmental decision makers in a deliberate attempt to harass Plaintiff."[11] (*Id.* ¶¶ 34, 39.) He further alleges that "[t]he cumulative actions of Defendant chilled Plaintiffs political expression, caused

---

[10] As a further example of Defendant allegedly treating "similarly situated residents" differently than Plaintiff, Plaintiff alleges that Defendant "has approved inspections on other landlords' property sight unseen" and that "[t]he City has done virtual inspection of Plaintiff's property, by another inspector, by email." (*See* SAC ¶ 17.) In support of this assertion, Plaintiff attaches as an exhibit an email to an unnamed individual (who, given the individual's email address, appears not to be Defendant) wherein Plaintiff said that he "installed the GFI . . . correctly" along with an attachment a photo of an electrical socket. (*See* ECF No. 40-2 at 25–26.) Plaintiff fails to explain how this attached email, devoid of context and between Plaintiff and an unnamed individual, demonstrates that Plaintiff was treated differently by Defendant. It is not the function of the Court to attempt to divine its application or relevance.

[11] While Plaintiff attaches numerous exhibits to the SAC, oddly, he fails to include the purported transcript where Defendant Boylan supposedly testified that the tickets issued against Plaintiff were issued arbitrarily and capriciously.

emotional distress, loss of work and vacation time, and financial harm." (*Id.* ¶ 48.) In addition to monetary damages, as stated, Plaintiff seeks a variety of relief, including the dismissal of "all" of his property maintenance citations, asking this Court to instruct state court judges in New Brunswick on how to conduct their hearings, and a "written apology." (*See id.* at 10–11.)

Defendant moves to dismiss Plaintiff's SAC on the grounds of failure to state a claim and *Younger* abstention.[12] (*See generally* ECF No. 49.) Defendant's motion is now ripe for consideration.

## II.    <u>LEGAL STANDARD</u>

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" must be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

In assessing *pro se* complaints, courts are obligated to "liberally construe[]" the litigant's pleading. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, all litigants, including *pro se* litigants, must put forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

---

[12] *Younger v. Harris*, 401 U.S. 37 (1971).

8

555; *see also Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) ("*[P]ro se* litigants . . . must still allege sufficient facts to support a claim." (cleaned up)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35).

## III.   DISCUSSION

The Court now turns to Plaintiff's claim that Defendant retaliated against him for the exercise of his First Amendment rights. (SAC ¶¶ 49–53.) As this Court has previously outlined, to plead a First Amendment retaliation claim, Plaintiff must allege that (1) he "engaged in conduct protected by a right in the Constitution," (2) Defendants "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights," and (3) a "causal link existed between the protected activity and the retaliatory action." *Falcone*, 92 F.4th at 205 (internal quotation marks omitted).

Regarding the causation prong, this Circuit has cautioned that "[a] court must be diligent in enforcing these causation requirements." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Indeed, "otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Id.* The Third Circuit has further recognized that "often public actors . . . must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions." *Id.* at 268.

"[F]or protected conduct to be a substantial or motiving factor in a decision, the decisionmaker[] must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). Courts may look to the "entire record before [it]" to determine whether

the causation element is met. *Weiler v. R&T Mech., Inc.*, 255 F. App'x 665, 668 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFlaminis*, 480 F.3d at 267.

In liberally construing Plaintiff's SAC, the Court gleans from Plaintiff's allegations that he engaged in two forms of constitutionally protected conduct entitled to First Amendment protection; (1) his filing of an appeal of the 2022 municipal contempt ruling; and (2) "exercising his right of free speech . . . [i]n expressing his views" on topics such as "corruption [and] an unelected school board," with unclear references to "Writs of Mandamus." (*See* SAC ¶¶ 7, 9, 26.)

### A. PLAINTIFF'S 2022 MUNICIPAL APPEAL

Turning first to Plaintiff's allegations stemming from his 2022 municipal appeal, the Court notes that Plaintiff's appeal unquestionably constitutes protected First Amendment activity. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("The Supreme Court has consistently held that an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances." (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972))).

Despite this protected speech, Plaintiff fails to show that a causal link exists between his protected activity (the appeal) and Defendant's retaliatory action (the issuance of municipal code violations). *Falcone*, 92 F.4th at 205. In previously dismissing Plaintiff's retaliation claim, this Court noted that Plaintiff failed to demonstrate that Defendant was "aware" of Plaintiff's conduct or political views at all. (*See* ECF No. 37 at 11.) Here, notably absent from Plaintiff's SAC is any

allegation that Defendant was aware of the events concerning Plaintiff's 2022 municipal appeal.[13] (*See generally* SAC); *see also Ambrose*, 303 F.3d at 493. This deficiency persists, despite Plaintiff having two chances to amend his pleadings. As a result, the Court finds that Plaintiff fails to state a claim for First Amendment retaliation following his 2022 municipal appeal.

### B.    PLAINTIFF'S ALLEGED POLITICAL SPEECH

Turning next to Plaintiff's general allegations regarding his speech, it is axiomatic that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 186 (3d Cir. 2005) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). However, given the sparse and conclusory nature in which Plaintiff's allegedly protected speech is pleaded, this Court questions whether Plaintiff's speech constitutes protected speech at all. Beyond stating that he "has long been publicly critical of corruption [and] an unelected school board," with a passing reference to unidentified "Writs of Mandamus," Plaintiff offers no further details regarding the actual content of such statements or to whom they were made. (SAC ¶ 7.) It is unclear to this Court what "corruption" Plaintiff purportedly spoke about, such as the nature of the corruption he complained about, whether the corruption affected himself or others, or what about his speech allegedly prompted Defendant's retaliatory response.

Plaintiff's SAC also contains naked references to his "political views and activism" from over two decades ago, without providing further details as to what such views entailed. (*See id.*

---

[13] Again, Plaintiff seeks to supplement his allegations as pleaded in his SAC by way of his opposition brief, arguing that Defendant was in fact aware of the municipal appeal because "Defendant was present and scheduled to testify at the 9/27/2022 municipal hearing." (*See* ECF No. 50 at 5.) As the Court advised Plaintiff previously, (*see* ECF No. 37 at 8 n.5; 9 n.6), and does so yet again, (*see supra* note 4), "facts contained within a brief but not the complaint cannot be considered at the motion to dismiss stage," *Frederico*, 507 F.3d at 201–02. The Court again declines to consider these additional allegations pleaded outside of Plaintiff's SAC.

¶¶ 11, 29, 31.) Further, Plaintiff attaches to his SAC several news articles from more than twenty years ago (or longer) reporting on his role as Commissioner of the New Brunswick Housing and Redevelopment Board, including a variety of opinion pieces authored by Plaintiff discussing New Brunswick's school system, as well as general articles that appear to express Plaintiff's personal views on a variety of issues affecting the city, unrelated to his official position as Commissioner. (*See generally* ECF No. 40-2 at 2–9, 13–20, 22–23.) However, Plaintiff fails to identify with specificity how the contents of those articles are in any way related to his First Amendment retaliation claim.

While the Court is mindful that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *see Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106), it is not lost on this Court that this is Plaintiff's *third* attempt at bringing forth this claim, and that he bears the burden of adequately pleading the same, *see Scott v. Vantage Corp.*, 845 F. App'x 170, 179 (3d Cir. 2021) ("[A] district court is not required to forage the record to make a party's case for him."). Despite multiple opportunities extended to Plaintiff to amend his pleadings, Plaintiff's SAC again fails to provide the Court with any details with which to evaluate his alleged protected speech in the context of his First Amendment retaliation claim. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("Stating a claim requires a complaint with enough factual matter to suggest the required elements of a claim.").

According to the SAC, Plaintiff sets forth two discrete time periods where he alleges he was the victim of retaliatory property maintenance violation citations, separated by more than a decade. The first occurred in or around 2012. (*See* SAC ¶ 22.) What follows is a decade-long gap wherein Plaintiff fails to allege a single action taken by Defendant (or anyone) that was done in

retaliation for any protected speech. (*Id.* ¶¶ 16, 22.) The Court finds that Plaintiff cannot plausibly allege a "pattern" of retaliation with more than a ten-year pronounced gap in between Defendant's alleged retaliatory acts. Further, the SAC fails to allege any political speech in any remote time proximity to Defendant's retaliatory acts that purportedly occurred in 2023 and the first half of 2024. In fact, the only protected speech Plaintiff alleges stems from articles attached to the SAC published no later than 2005—more than two decades ago. Thus, the Court is left to conclude that Plaintiff has failed to establish even the first element of a First Amendment retaliation claim.

In the alternative, even if this Court were to assume that Plaintiff adequately pleaded the first two elements of a First Amendment retaliation claim, Plaintiff's SAC fails yet again to demonstrate a causal link between his protected speech and Defendant's alleged retaliatory actions. A plaintiff cannot solely "show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Stated differently, the motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Additionally, "for protected conduct to be a substantial or motiving factor in a decision, the decisionmaker[] must be aware of the protected conduct." *Ambrose*, 303 F.3d at 493. Mindful that this Court must disregard allegations that constitute "no more than conclusions," *see Iqbal*, 556 U.S. at 679, Plaintiff's conclusory allegations that Defendant was "aware" of his protected speech because Plaintiff was reported on "frequently" by local newspapers and because "New Brunswick city officials and city workers have been more or less the same group of people for the last 20 years" and the like, (*see* SAC ¶¶ 10–13), still fail to demonstrate *what* Plaintiff said that would support an inference that Defendant's issuance of code violations to Plaintiff was done in retaliation for his speech.

13

In attempting to link Defendant's alleged retaliatory behavior to Plaintiff's speech, the Court notes that Plaintiff mentions Defendant by name no fewer than forty times. (*See generally id.*) The sheer high volume and frequency of references to Defendant is no substitute for the dearth of allegations as to what actions Defendant allegedly undertook in retaliation. Simply put, Plaintiff's SAC paints with a broad brush—the allegations are riddled with speculation, require impermissible inferential leaps, or are simply absent all together.

Plaintiff's weak attempts at establishing causation are highlighted by the absence of any allegations concerning Defendant's role as an inspector vis-à-vis any retaliation he purportedly engaged in. Plaintiff offers no further details regarding Defendant's role other than cursorily noting that Defendant's title is the "Chief Housing Inspector for the City of New Brunswick." (*Id.* ¶¶ 2, 6.) Plaintiff's SAC fails to allege *when* Defendant held the title of "Chief Inspector," including when such "retaliatory" tickets were issued by Defendant in this capacity. For all the Court knows, this may have been a title Defendant held when he issued tickets to Plaintiff in 2023-2024, or a position Defendant held nearly two decades ago when the news articles Plaintiff attached to his SAC were published. (*See generally id.* ¶ 31.)

Importantly, Plaintiff's SAC provides no clarity on whether Defendant had independent discretion to issue tickets, or whether his role was limited to simply forwarding gathered information to others—as Plaintiff's SAC acknowledges "at least three (3) layers of municipal departmental decision makers" were involved in the issuance of citations. (*Id.* ¶ 39.) The Court does not know whether Defendant's tickets were issued in accordance with a supervisor's directive, whether he performed solely fact-finding functions, or whether he occupied a purely administrative or ministerial role relating to the issuance of citations for property violations. By alleging nothing more than Defendant's "title"—with no further description of his authority

14

relating to his alleged retaliation—the Court finds that Plaintiff cannot plausibly allege that Defendant played a role in the ticketing decisions he claims were retaliatory, let alone that Defendant acted with retaliatory intent toward him.

In fact, Plaintiff's own SAC reveals the futility of its causation theory: "there is no logical explanation for this drastic increase except harassment and retaliation." (*Id.* ¶ 31.) A few paragraphs later, Plaintiff again conjectures that it is "highly unlikely" that he was "the only landlord with alleged standard of service violations," (*see id.* ¶ 36), and again restates a glaring concession: "the only logical explanation for this is harassment and retaliation." (*Id.*) The Court finds that such speculative and conclusory leaps are a fatal pleading defect mandating dismissal of Plaintiff's claim. *See Twombly*, 550 U.S. at 555 (plaintiff must plead facts rising above a speculative level).

As a result, Plaintiff's theory essentially invites this Court to draw a causal inference that the Third Circuit has cautioned against; one that would risk deterring public employees from doing their job. (*See id.* ¶ 40); *see also DeFlaminis*, 480 F.3d at 267–68. Plaintiff's theory of causation would open the floodgates by allowing any routine enforcement action to be recast as political retaliation based solely on the complainant's perception of the enforcement action. Plaintiff asks this Court to transform ordinary ticketing decisions into constitutional torts without any factual basis. As the Third Circuit has cautioned, without a genuine causal connection between the protected conduct and the alleged retaliatory action, "a public actor . . . particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *DeFlaminis*, 480 F.3d at 267. The allegations as pleaded in Plaintiff's SAC invite exactly this result; Defendant could be "chilled" from carrying out his routine duties as an inspector out of fear that any tickets he issued could be reframed as "retaliatory." In fact, Plaintiff's SAC

appears to acknowledge that this lawsuit has been effective; that government personnel have been "chilled" to refrain from carrying out their lawful functions. (*Id.* ¶ 33 (noting that since this lawsuit was filed, "Plaintiff has received zero (0) tickets from Boylan or the City despite windblown trash").)

Moreover, Plaintiff fails to allege how his statements reported by the press or his own articles written over two decades ago led to Defendant's purported retaliatory acts. The Court finds that such a substantial gap in the pleadings breaks the chain of causation. *See Falco v. Zimmer,* 767 F. App'x 288, 312–13 (3d Cir. 2019) (holding that "[t]he lapse of [nearly three] years between [Plaintiff's] first engagement in the [protected] activity and Defendants' alleged retaliation fatally attenuates the causal connection between the two") citing *DeFlaminis*, 480 F.3d at 267)).[14] Aside from the decades-old news articles attached to Plaintiff's latest pleading, his SAC is otherwise silent on any activity or actions taken by Plaintiff for the last twenty years to date.[15] *See Twombly,* 550 U.S. at 555 (party must put forth sufficient factual allegations "to raise a right to relief above the speculative level"); (*see generally* SAC.)

---

[14] The Third Circuit has offered additional examples of when temporal proximity is not "unusually" or "unduly suggestive." *See Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that two months was not "unduly suggestive"); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding that three weeks was not "unduly suggestive"); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (passage of nineteen months insufficient to support an inference of causation). *But see Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding causation when two days passed between the protected activity and the alleged retaliation).

[15] As previously held, the Court will not consider the 2022 municipal appeal because Plaintiff failed to plead Defendant knew of same. *See Ambrose*, 303 F.3d at 493 ("[F]or protected conduct to be a substantial or motiving factor in a decision, the decisionmaker[] must be aware of the protected conduct."). In any event, Plaintiff's allegation that "[t]here is no logical explanation for this drastic increase [in summonses issued to him following his municipal appeal] except harassment and retaliation," (*see* SAC ¶ 31), would be insufficient to establish causation otherwise, *see Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

Plaintiff's allegations—largely absent from his prior complaints—that Defendant told Plaintiff that the tickets were being written "due to Plaintiff's political beliefs," (SAC ¶ 31; *see also id.* ¶¶ 18, 22–23, 25, 39–40 (similar)), are too vague and conclusory to adequately plead causation, *see Iqbal*, 556 U.S. at 678. Plaintiff does not plead *what* Defendant said, instead only offering his conclusory characterizations of these statements. *See id.* These characterizations take the form of "Defendant said" followed by a legal conclusion. *See id.* ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Such "legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Moreover, a plaintiff cannot solely "show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Stated differently, the motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Simply alleging that Defendant's actions were retaliatory is insufficient to establish this causal link. *See Burtch*, 662 F.3d at 224 (finding that restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 216.

Thus, the Court finds that Plaintiff's SAC fails to demonstrate the "causal link" element of a First Amendment retaliation claim. *Falcone*, 92 F.4th at 205 (internal quotation marks omitted). Accordingly, the individual capacity claim against Defendant is **DISMISSED**.

## IV.    <u>DISMISSAL WITH PREJUDICE</u>

"Although '[l]eave to amend must generally be granted,' it is appropriate for a district court to deny leave when amendment would be futile." *Abulkhair v. Citibank & Assocs.*, 434 F. App'x

58, 63 (3d Cir. 2011) (quoting *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir.2006)). The court need not dismiss without prejudice and with leave to amend if amendment would be "inequitable or futile." *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 110 (3d Cir. 2002); *see also Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC,* No. 16-6510, 2019 WL 2281632, at \*4 (D.N.J. May 29, 2019) (dismissing with prejudice because plaintiff had repeatedly failed to correct the same deficiency in his pleading). "[W]hile this Court is mindful of the Third Circuit's teaching that a *pro se* civil complaint, generally, should not be dismissed without allowing the litigant an opportunity to amend," the Court finds that a dismissal with prejudice appears appropriate in the instant matter. *Jacobs v. A Robert Depersia Agency,* No. 09-180, 2009 WL 799944, at \*3 (D.N.J. Mar. 20, 2009).

Here, the Court dismisses Plaintiff's SAC with prejudice, as any further amendment would be futile. *See Grayson,* 293 F.3d at 110. Plaintiff has now had three opportunities before this Court to plead a viable claim for First Amendment retaliation, yet his SAC remains factually and legally deficient. Despite repeated amendment, Plaintiff still fails to allege the facts necessary to plead a claim for First Amendment retaliation, specifically the requirement that there be a causal connection between the purported protected activity and the alleged adverse action. Plaintiff's SAC is devoid of any allegations that support an inference of causation. On this factual record, the Court finds that further amendment would be futile.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's § 1983 claim as against Defendant in his individual capacity is **DISMISSED** with prejudice. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 22, 2026

19